UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DOUGLAS C.<br>      Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner<br>of the Social Security Administration,<br>      Defendant. | )<br>)<br>)<br>)  CAUSE NO.: 3:22-CV-477-JVB<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

Plaintiff Douglas C. seeks judicial review of the Social Security Commissioner's decision denying his application for disability insurance benefits and asks this Court to reverse that decision and remand this matter to the agency. For the reasons below, the Court grants Plaintiff's request, reverses the Administrative Law Judge's decision, and remands this matter for further administrative proceedings.

## PROCEDURAL BACKGROUND

In Plaintiff's January 7, 2020 applications for benefits, he alleged that he became disabled on April 16, 2019. After an August 9, 2021 hearing, the Administrative Law Judge (ALJ) issued his decision on September 7, 2021, finding that Plaintiff had the severe impairments of carpal tunnel syndrome (CTS), coronary artery disease (CAD), diabetes, and degenerative disc disease of the cervical spine, hypertension, neuropathy, and obesity. (AR 13). The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment, and further determined that Plaintiff had the residual functional capacity (RFC) to:

> perform light work . . . except he can frequently reach, handle, and finger. He can occasionally climb ramps and stairs, as well as occasionally stoop, kneel, crouch, and crawl. He can never climb ladders, ropes, or scaffolds, never work at

unprotected heights, never around dangerous machinery with moving mechanical parts, and never balance, as that term is defined in the [Selected Characteristics of Occupations].

(AR 16). The ALJ determined that Plaintiff could not perform his past relevant work but was able to perform the job requirements of the representative occupations of small products assembler, inspector/hand packager, and garment sorter. (AR 25-26). Accordingly, the ALJ found Plaintiff to not be disabled from April 16, 2019, through September 7, 2021—the date of the ALJ's decision. (AR 27). This decision became final when the Appeals Council denied Plaintiff's request for review.

## STANDARD OF REVIEW

This Court has authority to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court will ensure that the ALJ built an "accurate and logical bridge" from evidence to conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). This requires the ALJ to "confront the [plaintiff's] evidence" and "explain why it was rejected." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). The Court will uphold decisions that apply the correct legal standard and are supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support [the ALJ's] conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

## DISABILITY STANDARD

The Commissioner follows a five-step inquiry in evaluating claims for disability benefits under the Social Security Act. 20 C.F.R. § 1520(a)(4). The first step is determining whether the claimant is engaged in substantial gainful activity. If the claimant is, then the claimant is found to be not disabled. *Id.* § 1520(a)(4)(i). The remaining steps are:

> whether the claimant has a severe impairment; whether the claimant's impairment is one that the Commissioner considers conclusively disabling; if the claimant does not have a conclusively disabling impairment, whether [they] can perform

2

> [their] past relevant work; and whether the claimant is capable of performing any work in the national economy.

*Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (index numbers omitted). The claimant bears the burden of proof at every step except step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

## ANALYSIS

Plaintiff argues that the ALJ erred and that his decision should be reversed because the RFC is not supported by substantial evidence and because the ALJ failed to properly address Plaintiff's subjective complaints. The Court agrees with Plaintiff that the ALJ's RFC is not supported by substantial evidence of Plaintiff's hand impairments and remands on that basis.

At step four of the sequential evaluation, an ALJ must assess a claimant's RFC. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004) ("The RFC is an assessment of what work-related activities the claimant can perform despite [their] limitations."); *see also* 20 C.F.R. § 404.1545(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. § 404.1545(a)(3). According to the regulations:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies of ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *7. Although ALJs are not required to discuss every piece of evidence, they must consider all the evidence relevant to the disability determination and provide enough analysis in their decisions to permit meaningful judicial review. *Clifford v. Apfel*, 227

3

F.3d 863, 870 (7th Cir. 2000); *Young*, 362 F.3d at 1002. In other words, an ALJ must build an "accurate and logical bridge from the evidence to [their] conclusion." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ must also consider the combination of impairments, as the impairments in combination "might well be totally disabling" even if the impairments alone may not be serious. *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011).

Additionally, "administrative law judges of the Social Security Administration[] must be careful not to succumb to the temptation to play doctor. . . . Common sense can mislead; lay intuitions about medical phenomena are often wrong." *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990); *see also, e.g.*, *Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009) (warning that an ALJ may not "play[] doctor and reach[] his own independent medical conclusion"); *Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003). Rather than interpreting new evidence on their own, ALJs should submit new and potentially decisive medical evidence to medical scrutiny. *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014). "An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018).

Plaintiff asserts that the ALJ mischaracterized the record. Plaintiff contends that the worst error in this regard is the ALJ's failure to adequately address Plaintiff's hand impairments. The ALJ acknowledged that the opinions of the state agency medical consultants regarding manipulative limitations contradicted "the totality of the evidence, including the evidence received at the hearing level." (AR 24). Also, the ALJ noted that Plaintiff had injections for carpal tunnel syndrome in November 2020 and March 2021 and has hand weakness. *Id.* Ultimately, the ALJ concluded that Plaintiff was limited to only frequent reaching, handling, and

4

fingering. *Id.* Plaintiff contends, however, that the ALJ "grossly minimizes" the evidence of hand impairments and that the restriction to frequent manipulations is arbitrary. (Opening Brief at 10, ECF No. 13).

As Plaintiff identifies, he reported no relief from the March 2021 injections to treat carpal tunnel syndrome, and the medication for his hand weakness, stiffness, and pain was doubled at the same appointment. (AR 2180). In May 2021, Plaintiff reported hand numbness, tingling, and weakness along with worsening throbbing and shooting hand pain at 8/10 to Dr. Yahuaca, an orthopedic specialist, who documented right hand abnormalities of "obvious intrinsic atrophy," 4/5 strength, altered sensation in the ring and small fingers, and limited hand finger abduction and extension. (AR 2202-03). Plaintiff's left hand had "mild intrinsic atrophy, full range of motion and strength, and normal sensation and reflexes. (AR 2203). Plaintiff had negative compression tests at the carpal and cubital tunnels bilaterally. *Id.*

Also in May 2021, medical records report bilateral muscle wasting in the upper extremities, bilateral thenar[1] wasting with the right worse than the left, and diminished upper extremity strength and sensation. (AR 2198).

Dr. Yahuaca specified that Plaintiff had "quite a complicated presentation" that the specialist believed to be "coming from his cervical spine rather than a carpal tunnel syndrome." (AR 2204). An EMG and cervical spine MRI were ordered. *Id.* The MRI yielded an impression of "Mild diffuse congenitally narrow cervical spinal canal. Mild multilevel cervical degenerative disc disease. Negative for cervical cord or nerve root compression." (AR 697).

After the MRI was taken, Dr. Yahuaca reiterated that he believed "the majority" of Plaintiff's issues to come from his cervical spine but stated that if the EMG showed that there

---

[1] "Thenar" refers to the "fleshy eminence at the base of the thumb." *Thenar*, Tabor's Medical Dictionary, available at https://www.tabers.com/tabersonline/view/Tabers-Dictionary/741333/0/thenar (last visited May 5, 2023).

were also nerve issues that Dr. Yahuaca would see Plaintiff for that. (AR 2191). Otherwise, Plaintiff was seeing a Dr. Ryan for the spinal issues. *Id.* At the time of Plaintiff's administrative hearing, the EMG was scheduled to take place within two weeks. (AR 49).

Thus, Dr. Yahuaca, after examining Plaintiff and reviewing his cervical spine MRI, believed Plaintiff's hand issues to be related to Plaintiff's cervical spine. The ALJ, on the other hand, found that the MRI, "when considered with the totality of the evidence, would not preclude work within the residual functional capacity." (AR 21). The ALJ quotes Dr. Yahuaca for stating that there is no evidence of myelopathy, but he does not engage with Dr. Yahuaca's indication that, even after review of the MRI, he believes Plaintiff's hand issues to be related to cervical spine issues. *Id.* The Court sees no logical bridge between the MRI and the ALJ's RFC finding on reaching, handling, and fingering. The ALJ appears to have interpreted the MRI himself by relying on his law intuition, which is not something a non-medical professional should do. *Schmidt*, 914 F.2d at 118. This is underscored by (1) Dr. Yahuaca's belief that Plaintiff's hand issues are connected to his cervical spine issues, (2) the ALJ's rejection of all the medical opinions on Plaintiff's hand limitations, finding them all to overstate or understate Plaintiff's manipulative abilities in light of the evidence, and (3) the only opinion postdating Plaintiff's cervical MRI being that Plaintiff had severe neuropathy and could only reach up and handle objects occasionally. (AR 24-25, 2175-76).[2]

Under these circumstances, the Court concludes that the ALJ impermissibly played doctor by trusting only his own lay interpretation of the medical records, especially the June 3, 2021 cervical spine MRI. The ALJ failed to build the requisite logical bridge from the evidence of Plaintiff's hand impairments to the ALJ's conclusion that Plaintiff could reach, handle and

---

[2] More is not needed, but it also appears that the ALJ failed to consider whether Plaintiff's hand impairments may be due to diabetic neuropathy, which the record reflects is a part of Plaintiff's medical history. *See* (AR 2194).

finger up to 2/3 of an 8-hour workday. Accordingly, the Court must remand this matter for further administrative proceedings. In the interest of judicial economy, the Court will not address Plaintiff's other arguments.

## CONCLUSION

In light of the above, the Court **GRANTS** the relief requested in Plaintiff's Opening Brief [DE 13], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further administrative proceedings consistent with this opinion.

SO ORDERED on May 10, 2023.

s/ Joseph S. Van Bokkelen  
JOSEPH S. VAN BOKKELEN, JUDGE  
UNITED STATES DISTRICT COURT